# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs August 6, 2013

## STATE OF TENNESSEE v. TINA WOODS BUTLER

**Appeal from the Circuit Court for Dyer County**
**No. 12CR8      Russell Lee Moore, Jr., Judge**

---

**No. W2012-02532-CCA-R3-CD - Filed November 19, 2013**

---

The Defendant-Appellant, Tina Woods Butler, entered pleas of nolo contendere to six counts of theft of property valued at $1,000 or more but less than $10,000, Class D felonies, and ten counts theft of property valued over $500 but less than $1,000, Class E felonies. See T.C.A. §§39-14-103, -105(a). After denying her request for judicial diversion, the trial court sentenced Butler as Range I, standard offender to two-year sentences for each of the Class D felonies and to one-year sentences for each of the Class E felonies. The sentences were ordered to be served concurrently for a total effective sentence of two years on community corrections. On appeal, Butler argues that the trial court erred in denying her judicial diversion. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Charles S. Kelly, Sr., Dyersburg, Tennessee, for the Defendant-Appellant, Tina Woods Butler.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffery D. Zentner, Assistant Attorney General; Mike Dunavant, District Attorney General; and Joni R. Livingston, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

This case concerns the insurance business, formerly known as Associates Insurance Agency, Inc., owned and operated by the Defendant-Appellant, Tina Woods Butler, in Dyersburg, Tennessee. On February 13, 2012, the Dyer County Grand Jury returned a seventeen-count indictment against Butler covering a period of time between February 9,

2009 and July 16, 2010. Butler subsequently entered pleas of nolo contendere to six counts of theft of property valued at $1,000 or more, Class D felonies, and to ten counts of theft of property valued over $500, Class E felonies.[1] One count of money laundering was dismissed at this time. The matter proceeded to a hearing on October 30, 2012, for the trial court to consider judicial diversion or, if denied, to determine the length and manner of service of the sentences.

At the hearing to consider judicial diversion, the trial court, without objection from counsel, admitted into evidence the presentence report, which included a Community Corrections supervision report, a Tennessee Department of Correction investigation report, and victim impact statements.

Robert Heisse of the Tennessee Department of Commerce and Insurance testified that he had been an insurance fraud investigator in the Insurance Division for the past six years. In this capacity, he investigated an incident involving Butler. After interviewing some of the victims in the most recent cases, Investigator Heisse noticed a common theme. Some of the victims who purchased insurance policies would receive a cancellation notice. After contacting Butler, they were told that it was a paperwork error and that she would handle the issue. In the course of his investigation, Investigator Heisse determined that the issue had not been taken care of, and these individuals continued to pay premiums to Butler though their insurance was cancelled. In some cases, Butler provided the victims with a certificate of insurance, though these forms were from her business, and not from the insurance company itself. Investigator Heisse stated that Butler agreed to have her insurance license revoked in the course of the investigation and a consent order of revocation was entered in April 2009.

After Investigator Heisse's testimony, the trial court stated it had already noted that Butler committed many of the charged offenses after her insurance license had been revoked. Without objection, the trial court entered into evidence the consent order in the matter of Tennessee Insurance Division vs. Tina Woods Butler. The order, dated April 16, 2009, reflects in its findings of fact that, as early as 2001, complaints were filed against Butler for failure to forward her clients' advanced premiums to their insurance companies. The consent

---

[1] We note that Butler did not include the transcript from her September 19, 2012 plea submission hearing in the record on appeal. However, both counsel for Butler and for the State, citing State v. Caudle, 388 S.W.3d 273 (Tenn. 2012), argue in their briefs that the record is sufficient for meaningful appellate review. We have carefully reviewed the appellate record and conclude that the indictment, the judgment sheets, the sentencing hearing transcript, and the presentence report are sufficient for a meaningful review of the issue on appeal. See Caudle, 388 S.W.3d at 279 (concluding that "[i]f . . . the record is adequate for a meaningful review, the appellate court may review the merits of the sentencing decision with a presumption that the missing transcript would support the ruling of the trial court.").

order also reflects that Butler neither denied nor admitted to the findings of fact, but that she agreed to a revocation of her insurance license to avoid further administrative action.

Tina Woods Butler testified that she was forty-five years old and resided in Dyer County with her husband. She had three children, including a high school senior in Dyersburg, a twenty-three-year-old residing outside of the household, and a nineteen-year-old who attended Rhodes College. Since 2009, she had operated an insurance and tax preparation business. Previously, at the plea hearing, she had entered pleas of nolo contendere to the commingling and spending of her clients' money that had been intended for insurance premiums. She admitted responsibility and had paid restitution to the individuals who requested it. Butler said she was no longer participating in any insurance-related activities and that she was solely involved in the business of tax preparation.

Butler said her husband did not work and that he had last worked nine years ago. Therefore, she was the only source of income in their household and the sole support for their son in high school and for their daughter in college. Her daughter was on an academic scholarship to Rhodes, but it still cost approximately $3,500 for the first year. Butler recognized that it was inappropriate of her to fail to forward the money of some of her clients to the insurance companies. In two or three cases, she paid several thousand dollars out of pocket when her uninsured clients had accidents. She said she would be unable to continue her tax preparation business if she were to have a felony conviction on her record. In her tax business, she does not handle the clients' money. Sometimes the customers pick up their checks at her business office, but Butler denied having access to their funds. She said her father was disabled and in a wheelchair and that she did not receive any financial support from family members. Three checks made payable to Butler from her business, Associates Insurance Agency, Inc., were entered into evidence. The checks were from 2009, during a period covered in the indictment, and were valued at $500, $180, and $300.

Butler acknowledged that one customer was sued for lack of insurance and that a default judgment for the damages was entered against Butler in February 2012. She denied having any problems with alcohol or drugs. She did not socialize, go to parties, or take elaborate trips. Butler did go to Paris, France in 2006 as a chaperone with her daughter's high school French Club. Generally, she would go to work and then go home. If granted diversion, Butler said she would not be seen in the criminal courts again. She denied having any criminal record and agreed to follow the conditions of her probationary period. Butler said she was in good mental and physical health. She said she was remorseful for what happened and that the situation had caused her stress and humiliation.

On cross-examination, Butler agreed that customer Betsy Sego suffered mental anguish when she was sued and discovered that she was uninsured. Butler said she had devoted the majority of her time to taxes and had neglected the insurance side of the

business. She denied being involved in insurance sales after her insurance producer license was revoked in 2009. She stated that there were existing customers on the books, but the business was not pursuing new insurance customers. Butler acknowledged that there were some mistakes early on in 2001, as referenced to in the consent order, but that the errors were not continuous. She said that checks deposited into her tax business account from the U.S. Department of Treasury were not a mistake on her part. Rather, her business sometimes cashes a check for a customer if there is a very small tax return.

After the close of proof and arguments, the trial court denied Butler's request for judicial diversion. Butler timely filed a notice of appeal.

## ANALYSIS

On appeal, Butler argues that the trial court erred in denying her judicial diversion "by misinterpreting the law and by abuse of discretion." In response, the State contends that the trial court considered the appropriate factors, found that Butler committed multiple offenses even after her insurance license was revoked, and properly denied her request for judicial diversion. We agree with the State.

Tennessee Code Annotated section 40-35-313 outlines the requirements for judicial diversion. After a qualified defendant is found guilty, or pleads guilty or nolo contendere, a trial court has the discretion to defer further proceedings and place that defendant on probation without entering a judgment of guilt. T.C.A. § 40-35-313(a)(1)(A) (2010). A qualified defendant is defined as a defendant who pleads guilty or nolo contendere to, or is found guilty of, a misdemeanor or a Class C, D, or E felony; is not seeking diversion for a sexual offense or a Class A or Class B felony; and does not have a prior conviction for a felony or a Class A misdemeanor. Id. § 40-35-313(a)(1)(B)(i). Upon the qualified defendant completing a period of probation, the trial court is required to dismiss the proceedings against him or her. Id. § 40-35-313(a)(2). The qualified defendant may then request that the trial court expunge the records from the criminal proceedings. Id. § 40-35-313(b). "Eligibility, however, does not automatically translate into entitlement to judicial diversion." State v. Gretchen Rochowiak, No. E2012-00931-CCA-R3-CD, 2013 WL 1223388, at *2 (Tenn. Crim. App. Mar. 26, 2013) (citing State v. Bonestel, 871 S .W.2d 163, 168 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000)).

Whether to grant or deny a request for judicial diversion lies within the trial court's sound discretion. State v. Harris, 953 S.W.2d 701, 705 (Tenn. Crim. App. 1996) (citation omitted). Accordingly, the trial court's decision regarding diversion will not be disturbed on appeal absent an abuse of discretion. State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998) (citing State v. Hammersley, 650 S.W.2d 352, 356 (Tenn. 1983)). This court will conclude that the trial court did not abuse its discretion if the record contains

"'any substantial evidence to support the refusal.'" State v. Anderson, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992) (quoting Hammersley, 650 S.W.2d at 356).

A trial court must consider the following factors in deciding whether a qualified defendant should be granted judicial diversion: (1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; (6) the deterrence value to the defendant and others; and (7) whether judicial diversion will serve the interests of the public as well as the defendant. Electroplating, Inc., 990 S.W.2d at 229 (citing State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996); State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993) (citation omitted), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9-10 (Tenn. 2000)). The trial court may consider the following additional factors: "'[the defendant's] attitude, behavior since arrest, prior record, home environment, current drug usage, emotional stability, past employment, general reputation, marital stability, family responsibility and attitude of law enforcement.'" State v. Washington, 866 S.W.2d 950, 951 (Tenn. 1993) (quoting State v. Markham, 755 S.W.2d 850, 852-53 (Tenn. Crim. App. 1988) (citations omitted)). A trial court must weigh all of the required factors in determining whether to grant judicial diversion. Electroplating, Inc., 990 S.W.2d at 229 (citing Bonestel, 871 S.W.2d at 168). Finally, this court has previously held that "a trial court should not deny judicial diversion without explaining both the specific reasons supporting the denial and why those factors applicable to the denial of diversion outweigh other factors for consideration." State v. Cutshaw, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997) (citing Bonestel, 871 S.W.2d at 168).

Butler contends that the trial court abused its discretion in denying her request for judicial diversion. Specifically, she argues that the trial court misinterpreted the judicial diversion statute when it stated, "[E]ven if the Court granted diversion, [Butler] still has felony convictions until the record is expunged." We agree that the statute provides that a judgment of guilt is never entered against a person who is granted judicial diversion. See T.C.A. § 40-35-313(a)(1)(A) (2010). However, we disagree that the trial court failed to apply the correct law or committed reversible error based on its incorrect statement, and Butler cites no authority to support this contention. Because the record reflects that the trial court otherwise considered the appropriate factors and properly denied the request for judicial diversion, we conclude that this claim is without merit.

Butler additionally argues that at the sentencing hearing, the trial court prematurely denied judicial diversion before presentation of the defense's proof. Although the trial court stated, "I'm not going to grant diversion," before Butler presented her testimony, our review of the record shows that the court nevertheless heard the proof and considered the applicable factors. It first evaluated Butler's amenability to correction and found that she could be rehabilitated. The trial court acknowledged that Butler did not have any criminal record,

which weighed favorably for diversion. It also found nothing wrong with Butler's social history or physical or mental health. In denying the request for judicial diversion, however, the trial court stated, in pertinent part:

> And what concerns me is the second item, that is, the circumstances of the offense - - actually, in this situation, it would be the circumstances of the offenses, because there were many offenses - - and the deterrent effect that it would have on you and on others.

> What we're dealing with is a situation where you're actually stealing money from people, and it's not a one-time situation. It's not like a shoplifting [case] where you go in and steal some money or even though it might be more than that. You have, over the years, over and over and over again taken money that was not your money. The circumstances of the - - of the offense - - and you did that during the time period involved when you didn't even have the authority to sell insurance; that had already been taken away from you.

> Because of the circumstances of the offenses and because of the deterrent effect or value to you and to others, I can't grant diversion. Diversion will not be granted.

We note that the trial court evaluated and weighed all but one of the factors under Electroplating, Inc. Specifically, the trial court did not explicitly consider the final factor regarding "whether judicial diversion will serve the interests of the public as well as the defendant." Electroplating, Inc., 990 S.W.2d at 229. Nevertheless, we do not find that the trial court abused its discretion in denying diversion because there is ample evidence in the record to support the court's refusal. See Anderson, 857 S.W.2d at 572; see also Electroplating, Inc., 990 S.W.2d at 229 (holding that because the decision to grant judicial diversion is within the sound discretion of the trial court, this court "may not revisit the issue if the record contains any substantial evidence supporting the trial court's decision"); and State v. Keaton M. Guy, No. E2007-01827-CCA-R3-CD, 2008 WL 5130729, at *7 (Tenn. Crim. App. Dec. 8, 2008) (concluding that although the trial court did not "specifically enumerate" each factor regarding judicial diversion, the court "did address the requisite considerations in arriving at its decision to deny diversion"), perm. app. denied (Tenn. May 18, 2009).

The record reflects that Butler reported having received her Tennessee insurance agent license in 1990 or 1991 and that she had been self-employed since 1999. As early as 2001, complaints were levied against Butler such that she consented to have her insurance license revoked in April 2009. The indictment returned against Butler charged sixteen counts of theft covering a period of time between February 9, 2009 and July 16, 2010; she pleaded nolo contendere to all sixteen counts of theft. According to a State insurance fraud investigation,

-6-

Butler would inform her customers that the policy cancellation notices they received were the result of a paperwork error and that "she would take care of it." Some customers would then receive a certificate of insurance from Butler's business, and continued to pay her premiums, even after their policies were cancelled. The record also reflects that at least one of the victims was involved in a lawsuit and experienced negative consequences as a result of being uninsured. In denying judicial diversion, the trial court found it particularly troubling, and we agree, that there were multiple offenses committed over time, even when Butler lacked the authority to sell insurance.

This court has previously held that "the commission of an offense in separate actions over a period of time indicates a sustained intent to violate the law on the part of the appellant[,]" therefore weighing heavily against the granting of judicial diversion. State v. Hazel Gillenwater, No. E2008-01701-CCA-R3-CD, 2009 WL 2393105, at *4 (Tenn. Crim. App. Aug. 6, 2009) (affirming the trial court's denial of judicial diversion where defendant was a public official who falsified the city's computer records to take at least $20,361.98 in collections without authority from 2005 to 2007). This court has also held that the abuse of a position of trust weighs against the grant of diversion. See Hazel Gillenwater, 2009 WL 2393105, at *4; see also State v. Grissom, 956 S.W.2d 514, 518 (Tenn. Crim. App. 1997) (finding that the Appellant abused a position of private trust where she admitted to embezzling over $29,000 from her former corporate employer over an extended period of time). After considering Butler's record and the evidence presented at the hearing, the trial court weighed the circumstances of the offenses and the deterrence value more heavily than the other factors and denied the request for judicial diversion. Because the trial court found that Butler has "over the years, over and over and over again taken money that was not [her] money" during a period of time where she "didn't even have the authority to sell insurance," it cannot follow that judicial diversion would serve the interests of the public as well as Butler. The trial court properly determined that the circumstances of the offense and the need for deterrence necessarily outweighed the other factors considered by the court.

Butler has failed to show the absence of "any substantial evidence" supporting the trial court's denial of her request for judicial diversion. Anderson, 857 S.W.2d at 572. Rather, we find that there is substantial evidence in the record to support the trial court's denial of judicial diversion in this case. Accordingly, we conclude the trial court did not abuse its discretion, and Butler is not entitled to relief.

## CONCLUSION

After a thorough review, we affirm the judgments of the Dyer County Circuit Court.

_____

CAMILLE R. McMULLEN, JUDGE